UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Eric S. Sheinhartz, Charles R. Albert and Jeffery Scott Parkinson,

Plaintiffs,

v.

Saturn Transportation System, Inc., a Minnesota corporation, a/k/a Saturn Transportation Systems, and Saturn Transportation System of Delaware, LLC, a Delaware limited liability company, a/k/a Saturn Transportation Systems,

Defendants.

Civ. File No. 01-2489 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

Plaintiffs filed the above-entitled action to recover damages based on the alleged failure of Defendants to comply with the Federal Truth-In-Leasing regulations set forth in 49 C.F.R. §§ 376.12(d), (f), (g), (h), and (j) and violations of Minn. Stat. § 60K.14. In essence, Plaintiffs claim that Defendants failed to compensate them in accordance with the terms of their federally regulated leases by understating the revenue received from customers. Additionally, Plaintiffs claim that Defendants charged certain Plaintiffs more for insurance than the premium actually paid by Defendants without advising Plaintiffs of any additional fees. This matter is before the Court on Plaintiffs' Motion for Class Certification. For the following reasons, the Court grants the Motion.

**BACKGROUND**

For the purposes of this Motion, the Court need not completely disentangle the

MAR 2 6 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

skein of contradictory facts alleged by both sides. Because this matter is before the Court on a motion to certify a class, the substantive allegations in Plaintiffs' complaint will be accepted as true. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (citations omitted) (noting that courts should not inquire about the merits of a suit in determining whether it may be maintained as a class action). Accordingly, a brief sketch of the relevant background facts is sufficient.

Defendant Saturn Transportation Systems, Inc. ("Saturn Inc.") is a Minnesota corporation that is licensed by the United States Department of Transportation to haul freight in interstate commerce. (Hall Aff. ¶ 11.) Saturn Inc. shares a building, office supplies, and personnel with Defendant Saturn Transportation Systems of Delaware, LLC ("Systems LLC"). Systems LLC is a licensed property broker that was created by the owners of Saturn Inc. in March 1997.[1] (Couneya Aff. ¶ 13-14, 20, Ex. A.) In contrast to Saturn Inc., Systems LLC is not licensed to and does not haul freight in interstate commerce. Instead, it contracts with customers who seek to have freight brokered and then contracts with motor carriers like Saturn Inc. to move the freight. (Couneya Aff. ¶ 15.)

Because Saturn Inc. employs no truck drivers, it entered into federally regulated lease agreements with owner-operators, or over-the-road truck drivers, like Plaintiffs Eric Sheinhartz, Charles Albert, and Jeffery Scott Parkinson, to haul truckloads of freight. (Sorenson Aff. ¶ 5.) This case began in October 2000, when these three Plaintiffs filed

---

[1] It should be noted that Plaintiffs allege that Systems LLC did not obtain its license as a property broker until December 2000. (McHale Aff. ¶ 18.)

suit against Saturn Inc. and its alleged alter ego Systems LLC. Plaintiffs argue that pursuant to their individual lease agreements with Saturn Inc. they were to be paid a variable percentage of the total linehaul amount for each shipment that they hauled. (Sorenson Aff. ¶ 9.) Plaintiffs claim, however, that Saturn Inc. and Systems LLC were collusively skimming money from them by generating two sets of invoices: a real invoice sent to the customer, and a "dummy" invoice given to Plaintiffs. According to Plaintiffs, in many cases, the linehaul amount charged on the invoices given to customers was substantially greater than the linehaul amount charged on the corresponding "dummy" invoices. Plaintiffs Sheinhartz and Albert also allege that Defendants charged them for certain insurance in excess of the actual premium paid by Defendants.

According to Plaintiffs, Defendants' misconduct constitutes both a breach of the individual lease agreements that Plaintiffs had with Defendants and a violation of several federal regulations and a Minnesota statute. In particular, Plaintiffs claim that Defendants failed to clearly state "[t]he amount to be paid by the authorized carrier for equipment and driver's services" in violation of 49 C.F.R. § 376.12(d). Although the leases at issue in this case do provide a formula for calculating the amount of compensation that Plaintiffs were to receive, it appears that Plaintiffs are claiming that this formula was incomplete or unclear because it did not explain that two invoices from Defendants might exist with differing linehaul amounts. Plaintiffs also claim that Defendants violated 49 C.F.R. § 376.12(f) by failing to make timely payments of the proper amount due under the leases and that Defendants violated 49 C.F.R. § 376.12(g)

by failing to provide Plaintiffs with both sets of invoices.[2] Finally, Plaintiffs claim that Defendants violated 49 C.F.R. §§ 376.12(h) and (j), as well as Minn. Stat. § 60K.14, subd. 2, by failing to disclose that they were charging Plaintiffs more for certain insurance than the premium charged to Defendants.[3]

Defendants contend that two invoices always exist when a transaction is brokered. In fact, Defendants argue that Plaintiffs were aware of the broker/carrier relationship and were aware of the fact that brokers make their money by charging customers more for a load than the carrier charges. (See Albert Dep. at 54; Sheinhartz Dep. at 24.) Additionally, Defendants argue that Plaintiffs Sheinhartz and Albert were content with the cost of the insurance that they purchased through Saturn Inc.

---

[2] 49 C.F.R. § 376.12(f) states that "[t]he lease shall specify that payment to the lessor shall be made within 15 days after submission of the necessary delivery documents and other paperwork concerning a trip in the service of the authorized carrier." Id. Subsection (g) states that "[w]hen a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information." Id.

[3] 49 C.F.R. § 376.12(h) provides in pertinent part that "[t]he lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." Id. Subsection (j) goes on to state that "[i]f the authorized carrier will make a charge back to the lessor for any [] insurance, the lease shall specify the amount which will be charged-back to the lessor." Id.

Minn. Stat. § 60K.14, subd. 2, states in pertinent part that

> [n]o person shall charge a fee for any services rendered in connection with the solicitation, negotiation, or servicing of any insurance contract unless: (1) before rendering the services, a written statement is provided disclosing: (i) the services for which fees are charged; (ii) the amount of the fees; (iii) that the fees are charged in addition to premiums; and (iv) that premiums include a commission.

Id.

In the current Motion, Plaintiffs seek to certify a class of similarly situated owner-operators who contracted with Saturn Inc. between October 12, 1994, and October 11, 2000, and who were not properly paid because (1) Saturn Inc. charged them more than permitted for insurance coverage; and/or (2) Saturn Inc. failed to pay them the correct percentage of the amount invoiced to the customer.

**DISCUSSION**

Plaintiffs seeking to certify a class must initially establish that: (1) the class is so numerous that joinder of all the members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If these threshold criteria are met, Plaintiffs must then show that the action is maintainable under one of the subsections of Rule 23(b). In this case, Plaintiffs justify certification of their proposed class under Rule 23(b)(3), which requires that: (1) questions of law or fact common to the members of the class predominate over any questions affecting individual members; and (2) a class action be the superior method of adjudicating the controversy.

Although, as has been noted, the Court does not consider the merits of Plaintiffs' claims in assessing a motion for class certification, Plaintiffs bear the burden of establishing each prerequisite element to certification. See General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982). In rigorously analyzing whether Plaintiffs have met

their burden, the Court "may look past the pleadings . . . [to] understand the claims, defenses, relevant facts, and applicable substantive law. . . ." Thompson v. Am. Tobacco Co., Inc., 189 F.R.D. 544, 549 (D. Minn. 1999) (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)); Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (citations omitted) (noting that analysis of a class certification motion normally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action). Ultimately, because of the fact-specific quality of the analysis, the Court exercises broad discretion in determining whether or not to certify a particular class under Rule 23. See Reiter v. Sonotone Corp., 442 U.S. 330, 345 (1979); Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994); Parkhill v. Minn. Mut. Life Ins. Co., 188 F.R.D. 332, 337 (D. Minn. 1999).

### A. Certification Against Systems LLC

At the outset, Systems LLC contends that no class action should be certified against it because it had no contractual relationship with Plaintiffs or with any other owner-operators. Indeed, Systems LLC makes much of the fact that Plaintiffs have each admitted that they never had any contracts with it. (See Albert Dep. at 147; Sheinhartz Dep. at 53; Parkinson Dep. at 18.)

Plaintiffs, however, have alleged that Systems LLC is the alter ego of Saturn Inc. (See Am. Compl. ¶¶ 13, 31, 38, 40.) Not surprisingly, Plaintiffs base this allegation in large part on the fact that Systems LLC and Saturn Inc. share office space, personnel, and supplies. Although Defendants contend that this arrangement is sanctioned by an administrative services agreement, Plaintiffs have provided one affiant, a founder and

former Vice-President of Sales for Saturn Inc., who claims that he was not aware of any such agreement. (McHale Aff. ¶ 27.) Additionally, Plaintiffs point out that all of the invoices at issue in this litigation, including the invoices allegedly sent by Systems LLC to the customers, bear Saturn Inc.'s Federal Motor Carrier number, MC-275718, and none of the invoices explicitly bear Systems LLC's name or address. (See id. ¶ 28.) Finally, Plaintiffs contend that Systems LLC was not licensed as a property broker until December 2000, but that Saturn Inc. was licensed as a property broker in April 1997. (See id. ¶ 13.)

While Plaintiffs' factual allegations may ultimately prove incorrect, at this stage of the litigation it is not for the Court to weigh competing evidence. Plaintiffs have sufficiently articulated their allegation that Systems LLC is nothing more than an alter ego of Saturn Inc. to justify certifying a class against both Defendants, if all of the other prerequisites to certification are met.

## B. Rule 23(a) Requirements

### 1. Numerosity

Defendants do not challenge Plaintiffs' claim that approximately 400 owner-operators may have been overcharged for insurance during the proposed class period. (See Am. Compl. ¶ 12.) Accordingly, the Court finds that the numerosity requirement for Plaintiffs' first proposed subclass has been met.

One of the most entrenched disputes in this case, however, centers on whether Plaintiffs' second proposed subclass is sufficiently numerous. In order to certify a class action, joinder of all interested parties must be impracticable. Fed. R. Civ. P. 23(a)(1).

"No arbitrary or rigid rules regarding the required size of a class have been established by the courts, and what constitutes impracticability depends upon the facts of each case." Parkhill, 188 F.R.D. at 337 (citing Boyd v. Ozark Air Lines, Inc., 568 F.2d 50, 54 (8th Cir. 1977)). It is important to note that the rule merely requires that Plaintiffs demonstrate that joinder would be impracticable rather than impossible. See Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 573 (D. Minn. 1995) (citing Jenson v. Cont'l Fin. Corp., 404 F. Supp. 806, 809 (D. Minn. 1975)). In determining whether joinder would be impracticable, the Court may consider a number of factors including the size of the putative class, the size of each class members' individual claims, the inconvenience of trying individual suits, and the nature of the action itself. See Parkhill, 188 F.R.D. at 337 (citing Paxton v. Union Nat'l Bank, 688 F.2d 552, 559-60 (8th Cir. 1982)).

In the instant case, Plaintiffs estimate that as many as 500 owner-operators worked for Saturn Inc. during the proposed class period. (See Am. Compl. ¶ 12; Sorenson Aff. ¶ 70-71.) Relying on the affidavit of Cindy Sorenson, a Settlement Clerk for Saturn Inc. from April 1999 to August 2000, Plaintiffs estimate that Defendants skimmed money from as many as 85 percent of those owner-operators during that period. (Sorenson Aff. ¶ 49.) While Plaintiffs do not know the exact number of potential members of the proposed second subclass, they contend that Ms. Sorenson's affidavit suffices to show that the desired subclass is sufficiently numerous. See In re Bromine Antitrust Litig., 203 F.R.D. 403, 407 (S.D. Ind. 2001).

Defendants argue that Plaintiffs' estimates are nothing but unfounded guesses.

Defendants, however, offer no rebuttal evidence regarding the number of owner-operators who worked for Saturn Inc. during the proposed class period. In the absence of such evidence, evidence that should be readily available to Defendants, the Court accepts Plaintiffs estimate that 500 or more owner-operators worked for Saturn Inc. between October 1994 and October 2000.

Nevertheless, pursuant to Plaintiffs' underpayment theory of the case, not every owner-operator who worked for Saturn Inc. during this period is necessarily a potential member of Plaintiffs' second proposed subclass. Plaintiffs' underpayment theory is predicated on the existence of two invoices: one from Saturn Inc. to Systems LLC, and one from Systems LLC to the customer. Not every load hauled by owner-operators during the proposed class period involved both Saturn Inc. and Systems LLC. In fact, the record indicates that Defendants generated two sets of invoices in 5,429 out of 7,954 total transactions during the proposed class period. (See Courneya Aff. ¶ 51.)

Accordingly, if Plaintiffs' second proposed subclass is to be certified, it must be limited to only those owner-operators who had lease agreements with Saturn Inc. during the proposed class period specifying that they were to be paid a percentage of the total linehaul amount, but who received payment based on an invoice from Saturn Inc. to Systems LLC rather than an invoice sent to the customer. At this stage, based on Defendants' own estimate of the number of transactions where Defendants generated two sets of invoices, Plaintiffs' estimate that at least 500 owner-operators worked for Defendants during the proposed class period, and Plaintiffs' estimate that Defendants skimmed money from approximately 85 percent of the dispatches during the proposed

class period, the Court is convinced that the second proposed subclass is sufficiently numerous.

Beyond establishing that the proposed class is numerous, Plaintiffs have also demonstrated that joinder is impracticable. In this case, Plaintiffs contend that the owner-operators who are potential members of the class would not be financially, geographically, or logistically able to bring individual suits against Defendants. Plaintiffs argue that the average owner-operator drives approximately 100,000 miles per year and spends more than 300 nights away from home. These peculiar circumstances certainly mitigate against the practicability of individual lawsuits or joinder. Accordingly, the Court finds that the numerosity requirement of Rule 23(a) has been satisfied.

2. Commonality

Commonality does not require that every question raised in a proposed class action be identical. See Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1334 (8th Cir. 1974); Thompson, 189 F.R.D. at 549. Rather, commonality exists when the questions "'linking the class members is substantially related to the resolution of the litigation.'" DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995) (quoting Paxton, 688 F.2d at 561).

Although the commonality requirement is similar to the predominance requirement of Rule 23(b)(3), and tends to merge with the typicality requirement of Rule 23(a)(3), these requirements are distinct. While all of these requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims

are so interrelated that the interests of the class members will be fairly and adequately protected," Gen. Tel., 457 U.S. at 158 n. 13, the commonality requirement of Rule 23(a)(2) imposes a light burden on Plaintiffs and is easily satisfied. See In re Hartford Sales Practices Litig., 192 F.R.D. 592, 603 (D. Minn. 1999); Thompson, 189 F.R.D. at 549 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997) for the proposition that the predominance inquiry of Rule 23(b)(3) is far more demanding than the commonality inquiry of Rule 23(a)(2)). The fact that individualized issues may be implicated does not necessarily defeat commonality. See Thompson, 189 F.R.D. at 549 (citing DeBoer, 64 F.3d at 1174)).

In this case, there are common questions of law and fact. Despite Defendants' attempt to characterize Plaintiffs' claims as primarily contractual in nature, the Court finds that Plaintiffs have alleged a pattern of misconduct predicated on violations of federal regulations and a Minnesota statute that potentially affected a large number of owner-operators working for Defendants. While Defendants' alleged misconduct might not have affected each owner-operator to the same degree, the existence of individualized inquiry does not necessarily defeat commonality. Plaintiffs have presented sufficient evidence of common questions of law and fact to meet the requirements of Rule 23(a)(2).

3. Typicality

Like commonality, "[t]he burden of showing typicality is not an onerous one." Paxton, 688 F.2d at 562. The typicality requirement is met when the claims of the named plaintiffs arise from the same event or are based on the same legal theory as the claims of the class members. See Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir.

1996) (citations omitted) (stating that typicality exists if there are "other members of the class who have the same or similar grievances as the plaintiff"); Paxton, 688 F.2d at 562; Lockwood, 162 F.R.D. at 575. "The typicality requirement is designed to align the interests of the class and class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 310 (3rd Cir. 1998).

Defendants argue that the named Plaintiffs' claims are not typical of the first proposed subclass' claims because at least one of the named Plaintiffs did not purchase insurance through Saturn Inc. and the other named Plaintiffs were satisfied with the price that Saturn Inc. charged for their insurance. Defendants also argue that the named Plaintiffs' claims are not typical of the second proposed subclass' claims because the named Plaintiffs knew about the broker/carrier relationship and knew that they would be paid based on the amount that Saturn Inc. charged the broker.

The Court finds Defendants' arguments unpersuasive. Plaintiffs Sheinhartz and Albert have alleged that they were overcharged for insurance purchased through Saturn Inc. The fact that these Plaintiffs may have been satisfied with the price of the insurance does not obviate the need for Defendants to comply with federal and state law requiring them to disclose the amount of any fees charged in excess of the premiums. Similarly, Defendants' argument that the named Plaintiffs understood the broker/carrier relationship is misplaced. As has been noted, Plaintiffs' claims are based on the fact that Saturn Inc. and Systems LLC were not separate corporate entities. The clear implication of Plaintiffs' claims is that Defendants cannot avoid paying them in accordance with the

terms of their federally regulated leases by creating a fraudulent or misleading double-billing system.

Because the named Plaintiffs' claims and the proposed class' claims arise from the same conduct by Defendants alleged to have violated 49 C.F.R. §§ 376.12(d), (f), (g), (h), and (j) and Minn. Stat. § 60K.14, the Court finds that Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

4. Adequacy

To satisfy the adequacy requirement of Rule 23(a)(4), Plaintiffs must show that the named representatives and their attorneys are able and willing to prosecute the action competently and vigorously and that each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. See Parkhill, 188 F.R.D. at 339 (citations omitted); Lockwood, 162 F.R.D. at 576.

There is no debate over the adequacy of Plaintiffs' counsel to represent the interests of the proposed class. Instead, Defendants contend that the named Plaintiffs' cannot adequately represent the proposed class because Saturn Inc. has asserted counterclaims against them. (See Second Am. Countercl.) In essence, these counterclaims allege that Plaintiffs used Cindy Sorenson, an employee of Saturn Inc., to get confidential, trade secret information. Based on this information, Defendants allege that Plaintiffs formed a conspiracy to defame Saturn Inc. and encourage other owner-operators to break their agreements with Saturn Inc. According to Defendants, Plaintiffs undertook this conspiracy to exact revenge on Saturn Inc. because each of them had been terminated by Saturn Inc. for misconduct.

Defendants concede that these counterclaims are permissive under Fed. R. Civ. P. 13, but argue that the existence of these counterclaims evidences Plaintiffs' vengeful motivation in initiating this lawsuit. According to Defendants, Plaintiffs would taint the claims of other owner-operators and create a conflict of interest between the class representatives and the absent proposed class members. Defendants' speculation about the named Plaintiffs' motives is insufficient, however, to establish that the named Plaintiffs' goals and viewpoints are likely to diverge from those of the proposed class. Accordingly, the Court finds that the named Plaintiffs are adequate representatives of the proposed class.

**C. Rule 23(b)(3) Requirements**

Plaintiffs must also show that questions common to the class predominate over any questions affecting only individual members and that a class action is superior to other available methods of adjudicating the controversy. As noted above, the predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). See Amchem Prods., 521 U.S. at 624. "Although there is no bright-line boundary for determining whether common issues of fact or law predominate, 'predominance will be found where generalized evidence may prove or disprove elements of a claim.'" Hartford Sales, 192 F.R.D. at 604 (citation omitted).

Defendants argue that individual issues predominate over common issues of law and fact. Specifically, Defendants contend that the core of Plaintiffs' claims is contractual. In order to try this lawsuit, Defendants argue that the Court will have to

examine, for each putative class member, what type of lease he or she signed with Saturn Inc., whether he or she was to be paid a variable percentage of the total linehaul amount, what linehaul amount he or she was quoted by the dispatcher, whether he or she purchased insurance through Saturn Inc., and what he or she was told about the costs of such insurance.

As already noted, the Court finds that Plaintiffs' claims are not primarily contractual in nature. Plaintiffs' claims are predicated on violations of federal regulations and a Minnesota statute. Under Plaintiffs' theory of the case, it does not matter what linehaul amount each owner-operator was quoted nor does it matter what each owner-operator was told orally about the cost of insurance purchased through Saturn Inc. The dispositive and predominate legal and factual issues in this case are whether (1) Systems LLC is merely the alter ego of Saturn Inc.; (2) Plaintiffs' leases complied with federal regulations by clearly stating the amount to be paid to the owner-operators by Defendants; (3) Defendants provided Plaintiffs with copies of the correct invoices; (4) Defendants timely paid Plaintiffs' the appropriate amount for their services; and (5) Plaintiffs' leases appropriately stated that Defendants were charging more for certain insurance than the premiums paid by Defendants.

The individual inquires that must be made in this case are limited to the variations in lease provisions. In a very similar case dealing with alleged overcharges by a motor carrier for insurance, the court held that "the individual differences to which [defendant] points—variations in lease provisions and variations in how [defendant] or its agents treated particular contractors under certain circumstances—are insufficient to outweigh

the common issues. It follows that class issues predominate." Owner-Operator Indep. Drivers Assoc. v. Mayflower Transit, Inc., 204 F.R.D. 138, 148 (S.D. Ind. 2001). This Court likewise finds that the common issues related to Defendants' alleged violations of federal regulations and a Minnesota statute predominate.

The Court also finds that a class action is superior to other available methods of adjudicating this case. As noted above, the potential size of the proposed class is quite large. Additionally, in the absence of a class action, any individual owner-operator wishing to file a claim against Defendants would face the formidable, if not insuperable, hurdle of marshaling the time and resources needed to pursue an adjudication which might result in only a few thousand dollars of recovery. Given the commonality of the factual and legal questions at issue, the potential size of the proposed class, the relative ease with which a class adjudication can be tried, and the likelihood that in the absence of a class action many or most potential class members would be left without a remedy, the Court will grant Plaintiffs' Motion to certify a class.

**CONCLUSION**

The Court finds that Plaintiffs have satisfied all of the prerequisites to class certification. Plaintiffs' proposed class definition, however, is too broad. Accordingly, for the foregoing reasons and based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification (Clerk Doc. No. 30) is **GRANTED** as follows:

The Court certifies a class of similarly situated owner-operators who contracted with Saturn Inc. between October 12, 1994, and October 11, 2000, and who were

underpaid because (1) Saturn Inc. charged them in excess of the premium paid by Saturn Inc. for certain insurance coverage without advising them of this excess charge; and/or (2) they had lease agreements with Saturn Inc. during the proposed class period specifying that they were to be paid a percentage of the total linehaul amount, but they received payment based on an invoice from Saturn Inc. to Systems LLC rather than an invoice sent to the customer.

Dated: March 26, 2002

Paul A. Magnuson
United States District Court Judge